Honorable Dawn Morrell State Representative, 25th District P. O. Box 40600 Olympia, WA 98504-0600
Dear Representative Morrell:
By letter previously acknowledged, you have asked for our opinion on two questions relating to whether RCW 19.60, which regulates pawnbrokers and second-hand dealers, applies to purchasing scrap metal for recycling or further processing. Among other things, RCW 19.60 requires pawnbrokers and second-hand dealers to maintain records about each transaction in which they engage, including the identification of the other party to the transaction and a detailed description of the property involved. RCW 19.60.020. The chapter also requires pawnbrokers and second-hand dealers to make these records available to law enforcement officers and to report to law enforcement whenever they have good reason to believe that property in their possession was previously stolen. RCW 19.60.040. You have asked the following questions:
 1. Are individuals in the business of purchasing scrap metal for the purpose of recycling the scrap metal required to abide by the provisions of RCW 19.60.020 and RCW 19.60.040 as they relate to the collection of information and the filing of reports to law enforcement?
 2. Are the existing definitions of "metal junk" and "second-hand property" in RCW 19.60.010 sufficiently expansive to include scrap metal being purchased for further processing and recycling?
 [original page 2] BRIEF ANSWERS
To the extent that a pawnbroker or second-hand dealer purchases "metal junk" as defined by RCW 19.60.010(2), such transactions are exempt from RCW 19.60 under RCW 19.60.085(4). Existing statutory definitions of "metal junk" and "second-hand property" in RCW 19.60 are not broad enough to include all metal that might be purchased as "scrap metal" for further processing and recycling.
 BACKGROUND
Legislation governing pawnbrokers and second-hand dealers in Washington State dates back to the early 1900's. See Laws of 1909, ch. 249, §§ 229-36. Prior to 1984, the requirements were limited and, for the most part, applied only to those businesses operating in cities of the first or second class. Final Bill Rep. on Substitute S.B. 4274, at 1, 48th Leg., Reg. Sess. (Wash. 1984). This resulted in local governments enacting their own laws governing the dealings of such persons. Id.
The lack of uniformity in the regulation of pawnbrokers and second-hand dealers created significant problems for law enforcement. Id. The Legislature responded in 1984 by enacting uniform statewide legislation regulating pawnbrokers and second-hand dealers. See Laws of 1984, ch. 10, §§ 1-16. This legislation, as amended over the years, is contained in the Pawnbrokers and Second-Hand Dealers Act (Act), RCW 19.60.
Today, all transactions of a pawnbroker or second-hand dealer are subject to the provisions of the Act, with the exception of those transactions that fall within any of the exemptions set forth in RCW 19.60.085. A "transaction" is defined in RCW 19.60.010(8) to include the pledge, purchase, consignment, or trade of any item of personal property from a member of the general public. The term "personal property" is not defined in the statute but takes on its ordinary dictionary meaning of everything that is the subject of ownership not coming under the denomination of real estate. Black's Law Dictionary 1254 (8th ed. 2004).
 ANALYSIS 1. Are individuals in the business of purchasing scrap metal for the purpose of recycling the scrap metal required to abide by the provisions of RCW 19.60.020 and RCW 19.60.040 as they relate to the collection of information and the filing of reports to law enforcement?
RCW 19.60.020 requires pawnbrokers and second-hand dealers doing business in Washington to collect certain detailed information regarding all transactions.[1] Subsection (1) of [original page 3] this statute provides, among other requirements, the format in which the information must be kept, how long it must be retained, and the requirement for verification by government-issued picture identification of the seller, pledger, or consignor of any goods. Subsection (2) of the statute requires all records of such transactions to be open to inspection by designated law enforcement officers during ordinary business hours, or at reasonable times if ordinary hours of business are not kept, for a period of three years from the date of the transaction.
RCW 19.60.040(1) requires that pawnbrokers and second-hand dealers provide law enforcement (upon request) with a transcript of the record of all transactions conducted on a preceding day. Subsection (2) of this statute requires pawnbrokers and second-hand dealers to report to law enforcement property in their possession they have good cause to believe has been previously lost or stolen. The name of the owner, if known, must accompany such a report, along with the date of receipt of the property and the person from whom it was obtained. RCW 19.60.040(2).
Pawnbrokers and second-hand dealers purchasing scrap metal are required to comply with the requirements set forth in RCW 19.60.020 and .040 unless they fit within one of the exemptions set forth in RCW 19.60.085. This statute provides, in its entirety, as follows:
The provisions of this chapter do not apply to transactions conducted by the following:
 (1) Motor vehicle dealers licensed under chapter 46.70 RCW;
 (2) Vehicle wreckers or hulk haulers licensed under chapter 46.79 or 46.80 RCW;
 (3) Persons giving an allowance for the trade-in or exchange of second-hand property on the purchase of other merchandise of the same kind of greater value; and
 (4) Persons in the business of buying or selling empty food and beverage containers or metal or nonmetal junk.
RCW 19.60.085 (emphasis added).
The version of the Act as amended and adopted in 1984 did not include the exemption for persons in the business of buying or selling "metal junk" now contained in subsection (4). In 1985, the Legislature amended the Act, adding metal junk dealers to the list of persons exempt under RCW 19.60.085 and excluding used book dealers from the definition of "second-hand property" in RCW 19.60.010(7). Laws of 1985, ch. 70, §§ 1,4. The Final Bill Report elucidates the Legislature's purpose for this change:
 Some dealers have found it difficult to comply with the record-keeping requirements of the Act. Law enforcement officers agree with this assessment. In particular, the Act's property-holding periods and item-by-item disclosure requirements are burdensome and impractical for used-book sellers and metal [original page 4] junk dealers who have a rapid inventory turnover and a high-volume business. Some argue that the cost to these dealers of complying with the Act's requirements is higher than the cost of their losses due to theft, especially because used-book and metal junk dealers have relatively inexpensive inventories.
Final Bill Rep. on Substitute S.B. 3015, at 1, 49th Leg., Reg. Sess. (Wash. 1985).
The effect of this amendment was to remove from the requirements of the Act those persons buying or selling "metal junk". "Metal junk" is "any metal that has previously been milled, shaped, stamped or forged and that is no longer useful in its original form, except precious metals." RCW 19.60.010(2). Consequently, all transactions by pawnbrokers and second-hand dealers involving the purchase of scrap metal that comes within the definition of "metal junk" in RCW 19.60.010(2) are exempt from the requirements of the Act. RCW 19.60.085(4). A transaction involving the purchase of other scrap metal offered by a pawnbroker or second-hand dealer that comes within the definition of "second-hand property" but is not "metal junk" would be subject to the reporting requirements of RCW 19.60.020 and .040 unless the transaction meets one of the other exemptions set forth in RCW 19.60.085 as quoted above.[2]
 2. Are the existing definitions of "metal junk" and "second-hand property" in RCW 19.60.010 sufficiently expansive to include scrap metal being purchased for further processing and recycling?
RCW 19.60.010(2) defines "metal junk" as "any metal that has previously been milled, shaped, stamped, or forged and that is no longer useful in its original form, except precious metals." RCW 19.60.010(7) defines "second-hand property" as "any item of personal property offered for sale which is not new, including metals in any form, except postage stamps, coins that are legal tender, bullion in the form of fabricated hallmarked bars, used books, and clothing of a resale value of seventy-five dollars or less, except furs."
As the preceding definitions make apparent, all metals that are used or otherwise considered "not new" will come within the definition of "second-hand property"; moreover, "any metal that has previously been milled, shaped, stamped, or forged and that is no longer useful in its original form, except precious metals" would be "metal junk." RCW 19.60.010(7), (2). It is readily apparent that not all "scrap metal" will fall within the definition of "second-hand property" or "metal junk.
While typically the types of metals sold for scrap come from used manufactured articles or parts no longer fit for the use originally intended, some new metals also are sold as scrap metal. We note that a recent surge in the price of metals has resulted in a rash of thefts involving both used and new metal property throughout the country. Thieves are attempting to market this [original page 5] property for sale through scrap dealers for a quick source of cash. In particular, copper has been heavily targeted by thieves after hitting a record high earlier in the year. This means warehouses, utility companies, cargo trucks, and construction sites throughout the country are reporting record thefts of new metal property, such as large spools of copper wiring and new copper piping.[3] We think this type of unused metal property sold as scrap would be considered new and, therefore, would not come within the definition of "second-hand property" in RCW 19.60.010(7) or "metal junk" under RCW 19.60.010(2).
At this point, we should distinguish between (1) wire, piping, and other metals stolen from warehouses and storage and construction sites (material awaiting its initial installation and use), and (2) metals being removed from existing buildings, power and phone lines, fences, and other structures already in use. Thefts from existing structures have also been widely reported. This wire, piping, or other metal taken from an existing structure has already been in use. Therefore it is "not new" and falls within the definition of "second-hand property" as contained in RCW 19.60.010(7).[4] We note also that if metal taken from an existing structure meets the definition of "metal junk" as set forth in RCW 19.60.010(2), persons in the business of buying or selling "metal junk" are exempt from the reporting requirements by virtue of RCW 19.60.085.[5]
 [original page 6] To summarize, the term "second-hand property" includes some, but not all, metal which might be offered for sale to a pawnbroker or second-hand dealer. "New" metal not previously incorporated in any structure or otherwise put to use falls outside the definition. However, it is worth noting that purchases of new metal property by a pawnbroker or second-hand dealer would not excuse compliance with the Act. Any person who is "engaged in whole or in part in the business of purchasing, selling, trading, consignment selling, or otherwise transferring for value, second-hand property" is considered a second-hand dealer under RCW 19.60.010(6). A person in the business of purchasing both new metal property and "second-hand property" (whether metal or non-metal) is a second-hand dealer and must comply with the record-keeping, reporting, and retention requirements for all transactions unless otherwise exempt under RCW 19.60.085.[6]
We trust that the foregoing analysis will be helpful to you.
Sincerely,
ROB MCKENNA
Attorney General
COLLEEN G. WARREN
Senior Counsel
[1] Under RCW 19.60.010(6), "[s]econd-hand dealer means every person engaged in whole or in part in the business of purchasing, selling, trading, consignment selling, or otherwise transferring for value, second-hand property including metal junk, melted metals, [and] precious metals[.]" RCW 19.60.010(4) defines a "pawnbroker" as "every person engaged, in whole or in part, in the business of loaning money on the security of pledges of personal property, or deposits or conditional sales of personal property, or the purchase or sale of personal property."
[2] However, it should be noted that while a person may be exempt from the requirements of the Pawnbrokers and Second-Hand Dealers Act, a person purchasing scrap metal for recycling must still comply with the provisions of RCW 9.91.110. This includes the requirement to maintain a permanent record of all purchases of new, used, or second-hand metals from other than a manufacturer, remanufacturer, or distributor appointed by a manufacturer of such metals.
[3]
"Ark. Police See Rise in Copper Thefts," Insurance Journal, July
5, 2006, available at
http://www.insurancejournal.com/news/southcentral/2006/07/05/70056.htm
(last visited Jan. 2, 2007); "Rash of Metal Thefts Linked to Meth Abuse
in Pierce County," Seattle Times, July 14, 2006,
http://archives.seattletimes.nwsource.com/cgi-bin/texis.cgi/web/vortex/display?slug=webcopper14date=20060714
(last visited Jan. 2, 2007); "Cracking Down on Metal Thieves," The
Dallas Morning News, September 16, 2006,
www.dallasnews.com/sharedcontent/dws/news/city/southdallas/stories/091706dnmetcopperthefts.2cedeaa.html
(last visited Jan. 2, 2007); "Copper Thefts On The Rise," The Cincinnati
Inquirer, December 7, 2006,
http://news.cincinnati.com/apps/pbcs.dll/article?AID=/20061207/NEWS01/612070329/1056/COL02
(last visited Jan. 2, 2007); "Copper Wire Stolen From BPA," The Seattle
Post Intelligencer, December 8, 2006,
http://seattlepi.nwsource.com/local/295268_bpatheft08ww.html (last
visited Jan. 2, 2007); "Rise in Value Brings Increase In Theft of
Utilities' Copper Wire," The Seattle Times, December 13, 2006,
http://archives.seattletimes.nwsource.com/cgi-bin/texis.cgi/web/vortex/display?slug=pud13n0date=20061213
(last visited Jan. 2, 2007); "Copper Thieves Hit Construction Sites,"
The Montana Standard, December 20, 2006,
www.mtstandard.com/articles/2006/12/20/newsstate/hjjdihhjjjjfic.txt
(last visited Jan. 2, 2007).

[4] One might argue that the phrase "which is not new" when used in reference to "second-hand property" should be construed in such a manner so as to include any property, regardless of whether it is used or unused, so long as the property being offered for sale is acquired from someone other than the original retailer of the goods. This appears reasonable at first blush given that property being resold is arguably acquired "second-hand" simply because it is not acquired "first-hand" from the original seller. However, we reach a different conclusion, since the statute specifically provides that only property "which is not new" is considered "second-hand property." Moreover, it is a gross misdemeanor to violate any provisions of the Act. See RCW 19.60.066. Assuming an alternate, reasonable interpretation of the statute could be advanced, resulting in an ambiguity, the "rule of lenity" requires a court to strictly construe ambiguous statutes in favor of the defendant and against the state. See State v. Jacobs, 154 Wn.2d 596, 603,115 P.3d 281 (2005); United States v. Enmons, 410 U.S. 396, 411,93 S. Ct. 1007
(1973) (criminal statutes "must be strictly construed, and any ambiguity must be resolved in favor of lenity").
[5] To meet the definition of "metal junk," material must be "no longer useful in its original form". RCW 19.60.010(2). This definition seems inapplicable to wire, piping, or fencing removed from an original structure where it was actually in use, but whether an item is "no longer useful" is a question of fact. When a quantity of copper wire or other metal is offered to a junk dealer, it may not be obvious whether the material is "no longer useful in its original form."
[6] To avoid meeting the definition of "second-hand dealer" and the attendant reporting requirements, a person would have to deal exclusively in items that are "new" or otherwise fall outside the definition of "second-hand property" set forth in RCW 19.60.010 or, as noted above, would have to be engaged in the business of buying or selling metal junk and would therefore be exempt from reporting under RCW 19.60.085.